## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | |
|---|---|
| **BOBBI J. MULLINS,** ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 2:08cv00004 |
| ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT |
| Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Bobbi J. Mullins, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was no longer eligible for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423, 1381 *et seq*. (West 2003 & Supp. 2008). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning

mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

By decision dated August 15, 2002, Mullins was found to be disabled as of December 16, 2000, due to Hodgkin's disease, dysthymia and an adjustment disorder. (Record, ("R."), at 13, 15, 56.) However, in March 2005, the Commissioner terminated Mullins's benefits, finding that her condition had improved and no longer met a listed impairment. (R. at 41-43.) Mullins requested a reconsideration, (R. at 45), but the cessation determination was upheld. (R. at 50-52.) Mullins requested a hearing before an administrative law judge, ("ALJ"). (R. at 65.) A hearing was held on May 17, 2006, at which Mullins was represented by counsel. (R. at 276-87)

By decision dated August 11, 2006, the ALJ found that, as of March 1, 2005, Mullins was no longer disabled. (R. at 13-19.) The ALJ reported that Mullins had been disabled since December 16, 2000, and had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 13, 15.) The ALJ found that the medical evidence established that Mullins had Hodgkin's disease, dysthymia and an adjustment disorder, but he found that Mullins did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 15.) The ALJ also found that, as of March 1, 2005, Mullins no longer met or equaled any listed impairment and that she had experienced significant medical improvement. (R. at 15-16.) The ALJ further found that, as of

March 1, 2005, Mullins had the residual functional capacity to perform light work.[1] (R. at 16.) Thus, the ALJ found that, as of March 1, 2005, Mullins could perform her past relevant work as a cashier, as it is generally performed. (R. at 18.) Therefore, the ALJ found that Mullins was not under a disability as defined by the Act and was not eligible for benefits as of March 1, 2005. (R. at 18-19.) *See* 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi) (2008 ).

After the ALJ issued his decision, Mullins pursued her administrative appeals, (R. at 9), but the Appeals Council denied her request for review. (R. at 5-8.) Mullins then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2008). The case is before this court on Mullins's motion for summary judgment filed July 11, 2008, and the Commissioner's motion for summary judgment filed August 8, 2008.

## *II. Facts and Analysis*

Mullins was born in 1981, (R. at 280), which classifies her as a "younger person" under 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a high school education and past relevant work as a cashier and a restaurant prep cook. (R. at 57, 72, 79-81.)

Mullins reported on December 1, 2003, that she continued to work after

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can do light work, she also can do sedentary work. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) (2008).

-3-

December 16, 2000, her established onset date and past the date of the ALJ's decision allowing her claim. (R. at 78-84.) Mullins worked as a prep cook from December 2000 to June 2001 and left that job because her "mother worked there also and we didn't get along." (R. at 80.) Mullins worked as a cashier from October 2001 to February 2002 and left that job because she "didn't get along with the manager." (R. at 79.) She worked again as a cashier from February 2002 to April 2002 and switched to her last job, also as a cashier, in April 2002. (R. at 79, 81.) Mullins left her last job in November 2002 stating, "I quit because I was going to get my disability and my attorney told me I had to quit when I started receiving my checks." (R. at 81.)

Mullins reported that she cared for her children and took care of her own personal care and grooming needs without any assistance. (R. at 55, 71, 97, 100.) She reported that she cooked and prepared her own meals, did laundry, cleaned her room and bathroom and washed dishes. (R. at 55, 72, 93, 101, 171.) Mullins reported that she socialized regularly, including talking on the telephone, going out to eat with her family and seeing friends and family members. (R. at 55, 95, 171.) She reported that she had no problems getting along with others, including authority figures. (R. at 95.) She stated that she managed money, paid bills, used a computer and understood and remembered what she read, watched and heard. (R. at 54, 93, 95, 102.)

In rendering his decision, the ALJ reviewed records from Dr. Sue J. Prill, M.D., an oncologist; Norton Community Hospital; Dickenson Community Hospital; Dr. Virginia Baluyot, M.D.; Dr. Jackie Briggs, M.D.; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; R. J. Milan Jr., Ph.D., a state agency psychologist; Julie Jennings, Ph.D., a state agency psychologist; Dr. Kevin Blackwell, D.O.; Dr. Richard

M. Surrusco, M.D., a state agency physician; and Dr. Michael J. Hartman, M.D., a state agency physician.

Mullins was diagnosed with Hodgkin's disease on October 26, 2000, and received chemotherapy from December 4, 2000, to May 2001. (R. at 132, 248, 262.) Mullins was treated by Dr. Sue J. Prill, M.D., an oncologist at Blue Ridge Medical Specialists, P.C., through June 21, 2004. (R. at 131-40, 217-18, 257-64.)

By February 19, 2001, Mullins's condition had nearly completely resolved, with only two small nodes continuing to appear in her chest. (R. at 257.) On January 18, 2002, Mullins reported that she slept all of the time. (R. at 263-64.) She complained of low back pain and depression. (R. at 263.) Dr. Prill reported that Mullins's gait was smooth and coordinated, with full range of motion in her spine. (R. at 263.) On April 18, 2002, Dr. Prill assessed Mullins with situational depression, but noted that Mullins's condition had improved. (R. at 261-62.) Dr. Prill noted on November 5, 2002, that Mullins showed no symptomatology. (R. at 217.) A radiology report dated December 10, 2002, revealed no acute radiographic abnormality and no significant abnormal adenopathy. (R. at 243-44.) On April 16, 2003, Mullins reported that overall she felt fairly well. (R. at 135.) She complained of only mild generalized fatigue and tiredness and was maintaining a normal activity level. (R. at 135.) Mullins denied symptoms of depression or anxiety. (R. at 136.) Dr. Prill reported that Mullins was in full remission. (R. at 136, 219.) On October 14, 2003, Mullins's physical examination was normal, with only mild general fatigue, and she was otherwise healthy, alert and oriented. (R. at 132-33.) Mullins again denied symptoms of depression and anxiety. (R. at 133.) A pathology report dated December 31, 2003,

confirmed that Mullins was free of lymphoma. (R. at 219.)

The record shows that Mullins treated with Dr. Jackie Briggs, M.D., from October 2003 through November 2004. (R. at 126-30, 265-73.) Dr. Briggs conservatively prescribed Lortab, Xanax and Soma for Mullins's complaints of back pain, anxiety, depression and insomnia. (R. at 126-30, 265-73.) Dr. Briggs repeatedly advised Mullins to stop smoking and consistently prescribed conservative treatment. (R. at 126-30, 265-73.)

On September 7, 2004, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Mullins at the request of Disability Determination Services. (R. at 169-72.) While Mullins was mildly apprehensive about a possible recurrence of Hodgkin's disease, her mood was generally euthymic. (R. at 169, 171.) Lanthorn found no signs of depression and only mild signs of anxiety. (R. at 172.) Mullins reported that her energy level was "so-so," but admitted that she was "pretty lazy." (R. at 171.) Lanthorn found that Mullins exhibited no difficulties with memory or concentration and showed good communication skills. (R. at 172.) Lanthorn ruled out anxiety disorder, not otherwise specified, and assessed Mullins's then-current Global Assessment of Functioning score, ("GAF"),[2] at 81.[3] (R. at 172.)

---

[2]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[3]A GAF score of 81-90 indicates "[a]bsent or minimal symptoms . . ., good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns ...." DSM-IV at 32.

On March 4, 2005, Dr. Kevin Blackwell, D.O., examined Mullins at the request of Disability Determination Services. (R. at 173-76.) Mullins reported that she felt "fine," but tired easily. (R. at 173.) She had no health concerns other than some anxiety. (R. at 173.) Dr. Blackwell reported that Mullins had a good mental status. (R. at 174.) She had normal development, strength and reflexes throughout and no musculoskeletal problems. (R. at 175.) Her grip strength and fine motor skills were normal. (R. at 175.) Dr. Blackwell found that Mullins was capable of performing light to moderate activities, that she could sit for up to eight hours in an eight-hour workday, with normal positional changes, and could stand for up to six hours in an eight-hour workday. (R. at 175.) No other limitations were noted. (R. at 175.)

On March 24, 2005, Dr. Richard M. Surrusco, M.D., a state agency physician, indicated that Mullins had the residual functional capacity to perform light work. (R. at 207-16.) No postural, manipulative, visual, communicative or environmental limitations were noted. (R. at 212-14.) This assessment was affirmed by Dr. Michael J. Hartman, M.D., another state agency physician, on May 6, 2005. (R. at 216.)

On March 25, 2005, R. J. Milan Jr., Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Mullins suffered from a nonsevere anxiety disorder. (R. at 191-206.) Milan indicated that Mullins had no functional limitations. (R. at 201.) Milan also indicated that Mullins had not experienced any episodes of decompensation. (R. at 201.) This assessment was affirmed by Julie Jennings, Ph.D., another state agency psychologist, on May 5, 2005. (R. at 191.)

The Commissioner uses an eight-step process in evaluating whether a claimant's DIB benefits should be terminated and a seven-step process for a SSI cessation.[4] *See* 20 C.F.R. §§ 404.1594(f), 416.994(b)(5)(i)-(vii) (2008). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has an impairment that meets or equals the requirements of a listed impairment; 3) has seen medical improvement in her previously disabling condition; 4) has seen an increase in her residual functional capacity; 5) an exception to the medical improvement applies; 6) has a severe impairment; 7) can return to her past relevant work; and 8) if not, whether she can perform other work. *See* 20 C.F.R. §§ 404.1594(f), 416.994(b)(5)(i)-(vii). If the Commissioner finds conclusively that a claimant is disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1594(f), 416.994(b)(5) (2008).

Mullins argues that the ALJ erred by failing to apply the "medical improvement" standard prior to finding that her medical condition had improved. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 4-5.) Mullins also argues that the ALJ erred by failing to clearly state which of her impairments he considered to be severe. (Plaintiff's Brief at 5.)

As a preliminary matter, I note that the previous finding of Mullins's disability does not impose a presumption of continuing disability. *See* 42 U.S.C.A. § 423(f) (West 2003 & Supp. 2008); *Crawford v. Sullivan*, 935 F.2d 655, 656-57 (4th Cir. 1991); *Rhoten v. Bowen*, 854 F.2d 667, 669 (4th Cir. 1988). Instead, the Commissioner

---

[4]The seven steps for a SSI cessation mirror steps two through eight of the DIB cessation process.

-8-

Case 2:08-cv-00004-JPJ-PMS   Document 15   Filed 10/21/08   Page 8 of 13   Pageid#: 71

must demonstrate that the termination of benefits was based on a consideration of all the evidence in the record and a finding that the claimant was able to engage in substantial gainful activity. *See* 42 U.S.C.A. § 423(f); *Crawford*, 935 F.2d at 656-57.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(d), 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

Based on my review of the record, I find that substantial evidence supports the

Case 2:08-cv-00004-JPJ-PMS   Document 15   Filed 10/21/08   Page 9 of 13   Pageid#: 72

ALJ's finding that Mullins's disability ceased in March 2005 due to medical improvement related to her ability to do work. I also find that substantial evidence exists to support the ALJ's finding with regard to Mullins's residual functional capacity. Dr. Prill noted in January 2002 that Mullins had some depression, low back pain and slept too much, but found Mullins's physical condition to be normal, with no physical limitations. (R. at 263-64.) Within a few months, Mullins's condition had improved, and she displayed only situational depression. (R. at 262.) In 2003, Dr. Prill noted Mullins's continuing improvement. Mullins exhibited no mental health problems, her physical condition was normal, she appeared healthy, alert and oriented and complained of only mild fatigue. (R. at 132-33, 135-37.) In April 2003, Mullins reported that she was maintaining a normal activity level. (R. at 135.) She also denied symptoms of depression and anxiety. (R. at 136.) Mullins again denied symptoms of depression and anxiety in October 2003. (R. at 133.) By the end of 2003, Mullins's lymphoma was in complete remission. (R. at 136, 219.)

In September 2004, Lanthorn found that Mullins showed no signs of depression and that she showed only mild anxiety, noting that Mullins was not taking her anti-anxiety medication. (R. at 172.) Lanthorn reported that Mullins exhibited no difficulties with memory or concentration and that she showed good communication skills. (R. at 172.) Lanthorn assessed a GAF score of 81, indicating absent or minimal symptoms. (R. at 172.) In March 2005, Dr. Blackwell reported that Mullins was in good physical condition and could perform light to moderate activities. (R. at 175.) In addition, in March 2005, Dr. Surrusco indicated that Mullins had the residual functional capacity to perform light work. (R. at 207-16.) Furthermore, Milan found that Mullins's condition had improved significantly and that she had no mental

-10-

limitations that would limit her from performing her previous job as a cashier. (R. at 201, 205.)

Mullins also argues that the ALJ erred by failing to clearly state which of her impairments he considered to be severe. (Plaintiff's Brief at 5.) Based on my review of the ALJ's opinion, I find this argument is without merit. In finding number two on page three of the ALJ's decision, the ALJ noted that at the comparison point decision, Mullins was found to have three impairments, namely Hodgkin's disease, dysthymia and an adjustment disorder. (R. at 15.) In finding number four on page three, the ALJ found that Mullins continued to have the same impairments as of the cessation date. (R. at 15.) Finally, in finding number nine on page six, the ALJ found that, as of the comparison point decision, Mullins's impairments were severe. (R. at 18.) Mullins's argument that the ALJ improperly failed to repeat in his ninth finding what he found in his second and fourth findings, is without merit.

For all of the above-stated reasons, I find that substantial evidence supports the ALJ's physical residual functional capacity finding, and I recommend that the court affirm the ALJ's decision terminating benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

   1.   Substantial evidence exists to support the Commissioner's mental residual functional capacity finding;

-11-

2. Substantial evidence exists to support the Commissioner's physical residual functional capacity finding;

3. Substantial evidence exists to support the Commissioner's finding that Mullins's condition had medically improved; and

4. Substantial evidence exists to support the Commissioner's finding that Mullins was no longer disabled and not entitled to further benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Mullins's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the Commissioner's decision to terminate benefits.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or

-12-

recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, Chief United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 21st day of October 2008.

/s/   *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-13-